UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MAYER ELECTRIC SUPPLY COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 21-372** |
| **CHESTER ELECTRIC, LLC** | **SECTION: "G"** |

## ORDER AND REASONS

Plaintiff Mayer Electric Supply Company, Inc. ("Plaintiff") brings this suit against Chester Electric, LLC ("Defendant").[1] Plaintiff seeks to recover payment for materials it alleges are owed to it under a contract with Defendant.[2] Before the Court is Defendant's "Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction."[3] Plaintiff opposes the motion.[4] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court denies the motion.

## I. Background

On February 19, 2021, Plaintiff filed a complaint against Defendant in this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[5] On February 25, 2021, Plaintiff filed an

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 19.

[4] Rec. Doc. 21.

[5] Rec. Doc. 1.

1

amended complaint.[6] Plaintiff alleges that it entered into an agreement with Defendant through which Plaintiff agreed to sell electrical materials to Defendant on credit.[7] Plaintiff claims that it abided by the terms of the agreement and sold materials on credit to Defendant, but Defendant refused to pay for the materials.[8] Plaintiff claims that Defendant now owes Plaintiff $106,545.17 plus interest, service charges, and attorney's fees.[9]

On May 25, 2021, Defendant filed the instant motion to dismiss, alleging that this Court lacks jurisdiction over this matter because the amount in controversy does not exceed $75,000.[10] On June 7, 2021, Plaintiff filed an opposition.[11] On June 14, 2021, with leave of Court, Defendant filed a reply brief in further support of the motion to dismiss.[12]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion to Dismiss*

Defendant contends that the amount in controversy in the instant matter does not exceed $75,000 and thus, this Court lacks diversity jurisdiction.[13] Defendant claims that while Plaintiff alleges it is owed $106,545.17, Defendant "had paid and/or tendered $58,311.70 to [Plaintiff], with [Plaintiff]'s full knowledge, **before** suit was filed" and "[t]hus, at best, only $48,233.47 was

---

[6] Rec. Doc. 7.

[7] *Id.* at 1–2.

[8] *Id.*

[9] *Id.* at 2–5.

[10] Rec. Doc. 19.

[11] Rec. Doc. 21.

[12] Rec. Doc. 25.

[13] Rec. Doc. 19-1.

actually in dispute (controversy) as of February 19, 2021, the date [Plaintiff] filed suit in this Court."[14] Specifically, Defendant presents evidence to show that it paid Plaintiff $1,914.43 by check on December 8, 2020, tendered $30,649.82 to Plaintiff by check on February 11, 2021, and tendered $25,747.27 to Plaintiff by check on February 12, 2021.[15]

Defendant contends that the amount of a tendered payment should not be included when determining the amount in controversy.[16] Defendant claims that Plaintiff was "well aware, through email and telephone communications" with Defendant that "there was no controversy regarding at least $58,311.70 of said $106,545.17 amount."[17] Defendant alleges that copies of the tendered checks were sent to Plaintiff via email prior to Plaintiff's filing of this suit.[18] Thus, Defendant argues that at most $48,233.47 was in dispute at the time of filing and therefore, the amount in controversy requirement for diversity jurisdiction was not met and dismissal is appropriate.[19]

## B. *Plaintiff's Arguments in Opposition to the Motion*

In opposition, Plaintiff claims that its "good-faith allegations regarding the amount in controversy should control" because Defendant "has not shown (and cannot show) with legal certainty that, at the time of filing, the amount in issue was less than $75,000."[20] Plaintiff contends

---

[14] *Id.* at 2.

[15] *Id.* at 3.

[16] *Id.* at 4.

[17] *Id.* at 5.

[18] *Id.*

[19] *Id.*

[20] Rec. Doc. 21 at 4.

3

that under Louisiana law, a check constitutes payment only as of the day received, not tendered.[21] Plaintiff alleges that it had not received any payment toward the outstanding balance of $106,575.17 prior to filing the instant suit.[22] Plaintiff claims that it did not receive any payment until March 3, 2021 and thus, at the time of filing, the amount in controversy exceeded $75,000.[23]

C.    *Defendant's Arguments in Further Support of the Motion*

In reply, Defendant argues that the alleged amount in controversy at the time of filing must be "an actual amount in controversy."[24] Defendant claims that it has shown to a legal certainty that the amount in controversy did not exceed $75,000 at the time this suit was filed, and re-asserts that tendered payments should not be included when calculating the amount in controversy.[25] Defendant further claims that Plaintiff engaged in bad faith by claiming to have met the $75,000 amount in controversy requirement given that Plaintiff knew, and received notice via email, that Defendant had tendered $59,311.52 prior to the filing of this suit.[26] Defendant claims that post-filing, Defendant has paid an additional $11,509.34 via check on March 18, 2021, and $31,561.46 via check on May 18, 2021.[27] Therefore, Defendant contends that only $7,077.10 is currently in dispute.[28]

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Rec. Doc. 25 at 1.

[25] *Id.* at 2–3.

[26] *Id.* at 2–5.

[27] *Id.* at 5–6.

[28] *Id.* at 6.

4

### **III. Legal Standard on a Rule 12(b)(1) Motion to Dismiss**

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by the Constitution and statute."[29] A federal court has subject matter jurisdiction over an action pursuant to 28 U.S.C. § 1332, in cases in which there is (1) diversity between the parties; and (2) an amount in controversy exceeding $75,000, "exclusive of interest and costs."[30] The burden of proving such jurisdiction, commonly known as diversity jurisdiction, "rests upon the party who seeks to invoke the court's diversity jurisdiction."[31] "For a Rule 12(b)(1) motion to dismiss, the Court may base its resolution of the motion on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[32]

Typically, a plaintiff's allegation that the amount in controversy is met "is sufficient to invoke diversity jurisdiction"[33] as "[i]t has long been recognized that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith."[34] In such a scenario, dismissal for want of jurisdiction is proper only if the court determines to a "legal certainty" that the jurisdictional amount is not met.[35] If a defendant "has challenged

---

[29] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

[30] 28 U.S.C. § 1332.

[31] *Getty Oil Corp., a Div. of Texaco Inc. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).

[32] *Brand Energy Sols., LLC v. Rakocy*, No. 16-13990, 2016 WL 7476221, at *2 (E.D. La. Dec. 29, 2016) (Engelhardt, J.) (quoting *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989)) (internal quotation marks omitted).

[33] *Everett v. MeritPlan Ins. Co.*, No. 07-4738, 2008 WL 489327, at *1 (E.D. La. Feb. 19, 2008) (Lemelle, J.).

[34] *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[35] *Id.*

amount in controversy in the proper manner, the plaintiff must support [its] allegations of jurisdictional amount with competent proof."[36] To meet this burden, the plaintiff must show "that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount."[37]

## **IV. Analysis**

Plaintiff filed this suit in this Court asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[38] The diversity statute is satisfied upon a showing of (1) diversity between the parties; and (2) an amount in controversy exceeding $75,000, "exclusive of interest and costs."[39] It is undisputed that complete diversity of citizenship exists. However, Defendant argues that this Court lacks subject matter jurisdiction over this action because the amount in controversy does not exceed $75,000.[40]

In the Amended Complaint, Plaintiff alleges damages of $106,545.17 in unpaid invoices, along with interest, service charges, and attorney's fees.[41] Defendant presents evidence to show that it tendered $1,914.43 to Plaintiff by check on December 8, 2020, tendered $30,649.82 to Plaintiff by check on February 11, 2021, and tendered $25,747.27 to Plaintiff by check on February 12, 2021.[42] Plaintiff also presents evidence confirming that it received these payments in March

---

[36] *Bloom v. Depository Tr. Co.*, 136 F.3d 1328 (5th Cir. 1998) (citing *Lister v. Comm. Court*, 566 F.2d 490, 492 (5th Cir. 1978)).

[37] *Id.* (internal citation omitted).

[38] 28 U.S.C. § 1332.

[39] *Id.*

[40] Rec. Doc. 19-1.

[41] Rec. Doc. 7 at 5.

[42] *See* Rec. Docs. 19-2, 19-3.

6

2021.[43] Thus, the parties' disagreement centers not around whether Plaintiff was in fact ultimately paid by Defendant, but over whether the amount paid by Defendant should be counted in determining the amount in controversy.

Defendant contends that the amount in controversy was not satisfied when the case was filed on February 19, 2021, because Defendant had already tendered the partial payments to Plaintiff.[44] Conversely, Plaintiff claims that it satisfies the amount in controversy requirement because Defendant merely tendered the money prior to Plaintiff filing this suit.[45] According to Plaintiff, given that Plaintiff did not *receive* the money from Defendant until after it filed suit, any payment promised by Defendants prior to filing is irrelevant in calculating the amount in controversy.[46]

As stated above, the party who invokes federal jurisdiction bears the burden of showing that jurisdiction is proper. If a plaintiff provides an amount in controversy in a complaint, the plaintiff's "good faith assertion that the amount in controversy exceeds $75,000" is typically sufficient to satisfy the amount in controversy requirement.[47] However, if the court determines to a "legal certainty" that the jurisdictional amount is not met,[48] the court must dismiss the case without prejudice for lack of jurisdiction under Rule 12(b)(1).[49] If a defendant challenges the

---

[43] *See* Rec. Doc. 21-1.

[44] Rec. Doc. 19-1 at 2–3.

[45] Rec. Doc. 21 at 4–5.

[46] *Id.*

[47] *Chauvin v. Symetra Life Ins. Co.*, 422 F. Supp. 3d 1145, 1151 (E.D. La. 2019) (Fallon, J.).

[48] *St. Paul Reinsurance Co.*, 134 F.3d at 1253.

[49] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) (internal citation

amount in controversy alleged by a plaintiff "in the proper manner," the plaintiff must show "that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount."[50]

Plaintiff filed the Complaint on February 19, 2021,[51] and the Amended Complaint on February 25, 2021, alleging damages in excess of $106,545.17.[52] Such an allegation is typically sufficient to prove the amount in controversy.[53] Defendant attempts to challenge the amount in controversy by pointing to several checks that Defendant sent to Plaintiff. Specifically, Defendant provides evidence that it sent a check for $1,914.43 to Plaintiff on December 11, 2020.[54] Defendant has also provided evidence that it sent a check for $25,747.45 to Plaintiff, and emailed Plaintiff pertaining to the same, on February 12, 2021.[55] Defendant has further provided evidence that it sent a check for $30,649.82 to Plaintiff, and emailed Plaintiff regarding the same, on February 12 or 13, 2021.[56] In total, Defendant has provided evidence that it sent checks totaling $58,311.70 to Plaintiff prior to the February 19, 2021 filing of this suit. Subtracting this amount from Plaintiff's claimed damages, Defendant argues that only $48,233.47 was in controversy at the time the suit was filed.

However, the Court is unpersuaded by the cases Defendant cites for the proposition that

---

omitted).

[50] *See Bloom*, 136 F.3d at 1328.

[51] Rec. Doc. 1.

[52] Rec. Doc. 7.

[53] *See St. Paul Reinsurance Co.*, 134 F.3d at 1253.

[54] Rec. Doc. 19-2 at 5.

[55] *Id.* at 4.

[56] Rec. Doc. 19-3.

the amount in controversy is reduced by Defendant merely sending checks to Plaintiff when Plaintiff had not received the checks and they had not cleared. In the two district court cases that Defendant cites, which were decided by other judges in this district, those courts made only passing references to amounts "tendered," without describing whether those payments had been received.[57] In neither of those cases is it clear that the court is referring to payments that are sent, rather than received. In any event, neither case provides any analysis as to why merely sending a check would be sufficient to reduce the amount in controversy. [58]

Indeed, "tender" is defined as "the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, *without any stipulation or condition*."[59] However, under the Uniform Commercial Code, "payment by check is *conditional* and is defeated as between the parties by dishonor of the check on due presentment."[60] Applying these contract principles to the amount in controversy requirement, mailing the checks only amounted to making a conditional payment. Because Plaintiff had not yet received and deposited the checks by the time it filed the lawsuit, the Court cannot find "to a legal certainty" that there was less than the jurisdictional

---

[57] *Malone v. Scottsdale Ins. Co.*, 12-1508, 2012 WL 6632440 at *4 (E.D. La 2012) (Morgan, J.) ("Defendant tendered payment to Plaintiff on December 6, 2011 . . . one day before being served with a copy of Plaintiff's petition."); *Villoria v. Allstate Ins. Co.*,, 07-5737, 2007 WL 4591228 at *2 (E.D. La. 2007) (Berrigan, J.) ("Though the parties do not enumerate the payments that have already been tendered under the homeowner's policy, such an amount would only further reduce the amount in controversy for jurisdictional purposes.").

[58] Defendant also cites *Succession of Brennan*, 149 So. 896, 897 (La. App. 1 Cir. 1933), which is an eighty-eight-year-old case from the Louisiana First Circuit Court of Appeal, discussing *state court* jurisdiction. It is plainly irrelevant to the issue presented by the instant motion.

[59] *Tender*, BLACK'S LAW DICTIONARY (2d ed.); *see also Tender* MERRIAM-WEBSTER ("[A]n unconditional offer of money or service in satisfaction of a debt or obligation made to save a penalty or forfeiture for nonpayment or nonperformance.").

[60] U.C.C. § 2-511.

9

minimum in dispute at the time of filing.

At the time Plaintiff filed the lawsuit, Plaintiff alleges that Defendant owed Plaintiff $106,545.17. When this lawsuit was filed, Plaintiff had not yet received payments that would reduce the amount in controversy below the jurisdictional minimum. Therefore, the Court cannot find "to a legal certainty" that the amount in controversy was less than the jurisdictional amount at the time of filing. Accordingly, Defendant's Motion to Dismiss must be denied.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Chester Electric, LLC's "Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction"[61] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this 20th day of December, 2021.

                                                **NANNETTE JOLIVETTE BROWN**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**

---

[61] Rec. Doc. 19.