**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MAYER ELECTRIC SUPPLY COMPANY, INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 21-372** |
| **CHESTER ELECTRIC, LLC** | **SECTION: "G"** |

## ORDER AND REASONS

Plaintiff Mayer Electric Supply Company, Inc. ("Plaintiff") brings this suit against Chester Electric, LLC ("Defendant").[1] Plaintiff seeks to recover payment for materials allegedly owed under a contract with Defendant.[2] Before the Court is Plaintiff's "Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses and Counterclaims."[3] Defendant opposes the motion.[4] Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

On February 19, 2021, Plaintiff filed a complaint against Defendant in this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332.[5] On February 25, 2021, Plaintiff filed an

---

[1] Rec. Doc. 1.

[2] *Id.*

[3] Rec. Doc. 50.

[4] Rec. Doc. 53.

[5] Rec. Doc. 1.

amended complaint.[6] Plaintiff alleges that it entered into an agreement with Defendant through which Plaintiff agreed to sell electrical materials to Defendant on credit.[7] Plaintiff claims that it abided by the terms of the agreement and sold materials on credit to Defendant, but Defendant refused to pay for the materials.[8] Accordingly, Plaintiff brings claims under Louisiana law for (1) open account; (2) breach of contract; (3) unjust enrichment; and (4) attorney's fees.[9]

On June 28, 2022, Plaintiff filed the instant "Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses and Counterclaims."[10] On July 5, 2022, Defendant opposed the motion.[11]

## II. Parties' Arguments

### A.   Plaintiff's Arguments in Support of the Motion

Plaintiff moves for summary judgment on each of Defendant's affirmative defenses, including (1) Accord and satisfaction; (2) Payment; (3) Waiver; (4) Estoppel; (5) Duress; (6) Failure of consideration; (7) Laches; (8) Contributory negligence; (9) Breach of contract by Mayer; and (10) Failure to mitigate damages. Plaintiff also moves for summary judgment on Defendant's counterclaims for (11) Breach of contract; and (12) Unjust enrichment.

---

[6] Rec. Doc. 7.

[7] *Id.* at 1–2.

[8] *Id.*

[9] Rec. Doc. 1, 7.

[10] Rec. Doc. 50.

[11] Rec. Doc. 53.

*1.  Accord and Satisfaction*

Plaintiff argues that "accord and satisfaction occurs 'when the claimant of a disputed or unliquidated claim, regardless of the extent of his claim, accepts a payment that the other party tenders with the clearly expressed written condition that acceptance of the payment will extinguish the obligation.'"[12] Plaintiff argues that there is no evidence that Plaintiff accepted any such payment, and thus the Court should grant summary judgment for Plaintiff on this affirmative defense.

*2.  Payment*

Plaintiff argues that "payment is a special or affirmative defense in a suit on open account."[13] Plaintiff contends that "the record contains no evidence that [Defendant] paid [Plaintiff]'s claim in full," and thus the Court should grant summary judgment for Plaintiff on this affirmative defense.[14]

*3.  Waiver*

Plaintiff contends that the elements of waiver are "the existence, at the time of the alleged waiver, of a right, advantage, or benefit, the knowledge, actual or constructive, of the existence thereof, and an intention to relinquish such right, advantage or benefit."[15] Plaintiff argues that there is "no evidence that [Plaintiff] knowingly relinquished a right, advantage, or benefit," and thus the Court should grant summary judgment for Plaintiff on this affirmative defense.[16]

---

[12] Rec. Doc. 50-2 at 2.

[13] *Id*. at 3.

[14] *Id.*

[15] *Id*. (quoting *Michel v. Efferson*, 65 So. 3d 115, 119-20 (La. 1952)).

[16] *Id.*

### 4. *Estoppel*

Plaintiff contends that to show that Plaintiff is estopped from asserting a claim, Defendant must show (1) Plaintiff knew of the facts relied upon, (2) Defendant was induced to change its position in reliance upon the conduct of Plaintiff and (3) Defendant's own good faith and diligence.[17] Plaintiff argues that the record contains no evidence that (1) Plaintiff knew of any facts upon which Defendant relied to its detriment; or (2) Defendant acted with good faith and diligence.[18] Therefore, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[19]

### 5. *Duress*

Plaintiff argues that "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation."[20] Plaintiff contends that there is "no evidence that [Defendant] had a reasonable fear of unjust and considerable injury of any sort."[21] Thus, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[22]

### 6. *Failure of consideration*

Plaintiff argues that "the defense of failure of consideration concedes that there was consideration for the instrument in its inception, but alleges that the consideration has wholly or

---

[17] *Id.* at 3–4.

[18] *Id.* at 4.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

partially ceased to exist."[23] Plaintiff contends that there is "no evidence that the consideration underlying the agreement between [Defendant] and [Plaintiff] ceased to exist, either partially or wholly."[24] Thus, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[25]

### 7. Laches

Plaintiff argues that the defense of laches requires that (1) there was a delay in asserting a right or claim; (2) the delay was inexcusable; and (3) undue prejudice resulted from the delay.[26] Plaintiff argues that there is "no evidence that [Plaintiff] delayed in asserting any right or claim against [Defendant]," and thus argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[27]

### 8. Contributory Negligence

Plaintiff argues that because it has not asserted a negligence claim, the doctrine of contributory negligence does not apply.[28] Plaintiff contends that "[t]o the extent [Defendant] invokes Louisiana Civil Code article 2323, which governs comparative fault, the record contains no evidence that [Plaintiff] has any fault or caused or contributed to its own injury."[29]

---

[23] *Id.* at 4 (quoting *Smith v. La. Bank & Tr. Co.*, 272 So. 2d 678, 683 (La. 1973)).

[24] *Id.* at 5.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

### 9. *Breach of Contract by Plaintiff*

Plaintiff notes that it addresses this affirmative defense more fully in its briefing on Defendant's counterclaim for breach of contract.[30] However, Plaintiff contends that there is "no evidence of any agreement other than the written agreement proffered by [Plaintiff]," and that Defendant alleges "breaches of terms that do not exist in the written agreement."[31] Thus, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[32]

### 10. *Failure to Mitigate Damages*

Plaintiff argues that although an "oblige must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform," there is "no evidence that [Plaintiff] failed to make reasonable efforts to mitigate the damages caused by [Defendant]'s failure to perform under their agreement.[33] Thus, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this affirmative defense.[34]

### 11. *Counterclaim for Breach of Contract*

Plaintiff argues that under Louisiana law, the elements of a breach of contract are: (1) the obligor's undertaking an obligation to perform; (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee.[35] Plaintiff notes that Defendant claims it violated the agreement by: (1) closing the Harahan warehouse (2) requiring Defendant to

---

[30] *Id.* at 5–6.

[31] *Id.* at 6.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 7.

accept delivery of materials earlier than anticipated; (3) delivering incorrect materials; and (4) failing to deliver all of the ordered materials.[36] Plaintiff argues that the agreement requires all modifications to be in writing, and that there is no evidence of such a writing modifying their written agreement.[37] Plaintiff argues that the written agreement "says nothing about the amount of time [Plaintiff]'s Louisiana warehouse would remain open or any obligation on [Plaintiff]'s part to store materials for [Defendant]."[38] Plaintiff further argues that there is "no evidence that [Plaintiff] delivered incorrect materials or failed to deliver all the materials [Defendant] requested."[39] Thus, Plaintiff argues the Court should grant summary judgment for Plaintiff on Defendant's counterclaim for breach of contract.[40]

### 12. Counterclaim for Unjust Enrichment

Plaintiff argues that Defendant's unjust enrichment counterclaim is based on "the same reasons [Defendant] claims [Plaintiff] breached the contract between them."[41] Plaintiff contends that there is "no evidence that [Plaintiff] was enriched at [Defendant]'s expense."[42] Additionally, Plaintiff argues that because Defendant "claims it has legal remedies in the form of a breach of

---

[36] *Id.*

[37] *Id.* at 7–8.

[38] *Id.*

[39] *Id.* at 8.

[40] *Id.*

[41] Rec. Doc. 50-2 at 8.

[42] *Id.*

contract claim, [] it has no remedy for unjust enrichment."[43] Thus, Plaintiff argues that the Court should grant summary judgment for Plaintiff on this counterclaim.[44]

**B.**      ***Defendant's Arguments in Opposition to the Motion***

*1. Accord and satisfaction*

Defendant argues that an "accord and satisfaction" occurs when "there is a disputed claim between the parties, an amount tendered towards a certain amount to settle the disputed claim, and an acceptance of the tender.[45] Defendant argues that it paid a series of checks totaling $58,311.70 to Plaintiff in accord and satisfaction of Plaintiff's disputed claim for $106,545.17.[46] Defendant argues that because Plaintiff accepted these payments, "there is a dispute of material fact that accord and satisfaction exists at least regarding $58,311.70."[47]

*2. Payment*

Defendant argues that Plaintiff's motion ignores the fact that Defendant paid $58,311.70 toward Plaintiff's claim for $106,545.17.[48] Therefore, Defendant argues that "there is a genuine dispute of material fact that should prevent summary judgment on this claim of payment."[49]

---

[43] *Id.*

[44] *Id.*

[45] Rec. Doc. 53 at 5.

[46] *Id.* at 6.

[47] *Id.*

[48] *Id.*

[49] *Id.*

### 3. Waiver

Defendant argues that Plaintiff "waived its right to payment by knowingly breaching its contract with Defendant through accelerating delivery and payment for electrical materials and forcing Defendant to warehouse said materials."[50] Therefore, Defendant argues that Plaintiff "cannot request payment because it failed to perform its obligation in the contract that would justify such payment."[51] Furthermore, Defendant argues that because Plaintiff has received payment in the amount of $58,311.70, "[i]t has thus waived its claim to payment for the full sum of [$]106,545.17."[52]

### 4. Estoppel

Defendant argues that Plaintiff "made a representation that they would warehouse all construction materials and allow Chester to order and pay for these materials on an as-needed basis."[53] Defendant contends that it was justifiable for Defendant to rely on this representation because "the initial course of dealings between the parties saw [Defendant] request delivery of and pay for them as he needed them, rather than have them delivered all at once."[54]  Defendant contends that it relied on this representation to its detriment, because these "misrepresentations caused [Defendant] to suffer losses in having to pay for extra storage containers and in paying for broken and unnecessary supplies on an accelerated basis."[55]

---

[50] *Id.* at 7.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 8.

[54] *Id.*

[55] *Id.*

### 5. Duress

Defendant further argues that it was "a victim of economic duress when [Plaintiff] unexpectedly accelerated delivery of all materials to Defendant," as "Defendant had no option, despite [Plaintiff]'s breach and Defendant's loss of profit, because it needed the materials from [Plaintiff] or else it would have lost its construction job with general contractor B&L."[56]

### 6. Failure of Consideration

Defendant argues that consideration "initially existed on the premise that [Plaintiff] would warehouse construction materials for [Defendant] and allow [Defendant] to order and pay for them on an as-needed basis."[57] However, Defendant argues that consideration "ceased to exist when [Plaintiff] closed their Harahan warehouse and accelerated delivery and payment of materials."[58] According to Defendant, Defendant had to warehouse and pay for the materials immediately, "which was a violation of the parties' original consideration."[59]

### 7. Laches

Defendant makes no argument as to its affirmative defense of laches.

### 8. Contributory Negligence

Defendant makes no argument as to its affirmative defense of contributory negligence.

---

[56] *Id.* at 8–9.

[57] *Id.* at 9.

[58] *Id.*

[59] *Id.*

*9. Breach of contract by Mayer*

Defendant argues that because the contract is silent as to Plaintiff's duty to warehouse and deliver materials on an as-needed basis, the contract must be "interpreted by 'the conduct of the parties before and after the formation of the contract."[60] Defendant argues that the parties emails and conduct proves "that the parties initially understood, in accordance with their agreement, that [Plaintiff] was to warehouse and deliver goods to [Defendant] on an as-needed basis, and that [Defendant] would be invoiced for materials as [it] purchased them individually."[61] Defendant argues that Plaintiff breached this agreement by accelerating delivery and payment and requiring Defendant to warehouse the materials.[62]

*10. Failure to Mitigate Damages.*

Defendant argues that Plaintiff "failed to mitigate damages by sitting on monies for payment that had been tendered via checks in order to establish federal jurisdiction and justify an award for attorney's fees."[63] Defendant contends that Plaintiff "acknowledged and received payment for significant amounts of the $106,545.17 they were alleged to have been owed," but "[r]ather than cash these checks, [Plaintiff] sat on them to create the impression they were owed $106,545 in order to justify an award for attorney's fee[s] and to artificially generate the amount in controversy needed for federal jurisdiction."[64] Defendant argues that the emails demonstrating

---

[60] *Id.* at 10.

[61] *Id.*

[62] *Id.* at 10–11.

[63] *Id*. at 11.

[64] *Id*.

that Defendant sent checks to Plaintiff "create a genuine dispute of material fact over whether [Plaintiff] failed to mitigate its damages."[65]

### 11. Breach of contract counterclaim

Defendant argues that the parties' "course of dealings alone creates a genuine dispute of material fact regarding a breach of contract."[66] Defendant contends that because the "credit agreement is silent on how [Plaintiff] is supposed to deliver and store the goods for [Defendant]," the Court must "view the agreement in terms of 'the conduct of the parties before and after the formation of the contract."[67] Defendant contends that the "email correspondence between the parties during the agreement . . . clearly evidence that the parties' intent was to have [Plaintiff] warehouse all job-specific materials for [Defendant], and then deliver them to [Plaintiff] at the job site on an as-needed basis."[68] According to Defendant, it would "simply be invoiced for only the materials actually requested and delivered for needs that arose during the project."[69] Defendant argues that the parties' "conduct immediately after the contract was signed makes it clear that [Plaintiff] had an obligation to keep [the materials] warehoused until Defendant requested them."[70] Defendant argues that Plaintiff "breached its obligation to Defendant when it unilaterally decided

---

[65] *Id.*

[66] Rec. Doc. 53 at 13.

[67] *Id.*

[68] *Id.*

[69] *Id.* at 13–14.

[70] *Id.*

to accelerate the delivery of materials to Defendant, accelerate the demand for payment of materials, and by forcing [Defendant] to warehouse all construction materials."[71]

Lastly, Defendant argues that Plaintiff is liable for the costs Defendant incurred for storage because, under Louisiana law, any contractual provision that waives consequential damages is "null and void."[72] Therefore, Defendant contends that Plaintiff is not entitled to summary judgment on this defense.

*12. Unjust enrichment counterclaim*

Defendant argues that unjust enrichment "is being pleaded in the alternative to Defendant's breach of contract claim, not alongside it."[73] Defendant contends that Plaintiff was unjustly enriched by "forcing [Defendant] to warehouse electrical supplies and materials, accelerating said materials delivery, and demanding pre-payment of all said materials."[74] Defendant contends that it was "impoverished by this decision as it had to obtain a secure storage facility at their own cost and forced to pay in advance for as of yet unneeded, incorrect and defective electrical materials and supplies."[75] Defendant asserts that "a claimant can plead for unjust enrichment in the alternative in case their pleadings for other contractual remedies do not succeed."[76] Defendant

---

[71] *Id.* at 14.

[72] *Id.*

[73] *Id.*

[74] *Id.* at 15.

[75] *Id.*

[76] *Id.*

argues that its "unjust enrichment claim will stand in the event its breach of contract counterclaim is unsuccessful, as it will at that point be the only legal remedy left to Defendant."[77]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[78] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[79] All reasonable inferences are drawn in favor of the nonmoving party.[80] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[81] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[82] The nonmoving party may not rest upon the pleadings.[83] Instead, the nonmoving

---

[77] *Id.*

[78] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[79] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[80] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[81] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[82] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[83] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[84]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[85] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[86] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[87] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[88]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations,

---

[84] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[85] *Celotex*, 477 U.S. at 323.

[86] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[87] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[88] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

by unsubstantiated assertions, or by only a scintilla of evidence."[89] Moreover, the nonmoving party

may not rest upon mere allegations or denials in its pleadings.[90]

## IV. Analysis[91]

Plaintiff moves for summary judgment on each of Defendant's affirmative defenses,

including (1) Accord and satisfaction; (2) Payment; (3) Waiver; (4) Estoppel; (5) Duress; (6)

Failure of consideration; (7) Laches; (8) Contributory negligence; (9) Breach of contract by Mayer;

and (10) Failure to mitigate damages. Plaintiff also moves for summary judgment on Defendant's

counterclaims for (11) Breach of contract; and (12) Unjust enrichment. The Court will address

each in turn.

### 1.  Accord and satisfaction

"The doctrine of accord and satisfaction estops a creditor from suing on a compromised

debt."[92]   "For there   to   be a valid accord and satisfaction of a debt or claim,   there must be:

(1) a disputed claim;  (2) a tender of a check for less than  the amount of  the claim by  the debtor,

and (3) an acceptance of the tender by the creditor."[93] However, [e]ssential to finding that a valid

accord and satisfaction occurred is a showing that the creditor understood that the payment was

tendered in full settlement of the dispute."[94] Therefore, "an accord and satisfaction is not present

---

[89] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[90] *Morris*, 144 F.3d at 380.

[91] Because Defendant has asserted both an affirmative defense and a counterclaim based on Plaintiff's alleged breach of contract, and the claims are identical, the Court will analyze them together.

[92] *Complete Med. Sys., LLC v. Health Net Fed. Servs., LLC*, No. 13-0367 (La. App. 1 Cir. 11/1/13); 136 So. 3d 807, 810–11.

[93] *Id.* (citing *Harrington v. Aetna Life & Cas. Co*., 441 So. 2d 1255, 1256 (La. App. 1 Cir. 1983)).

[94] *Id.* (citing *Ryan v. State Farm Mut. Auto. Ins. Co*., 2010-0961, 2010-0962 (La. App. 1 Cir. 12/22/10); 68 So. 3d 563, 569).

if there is no evidence that the creditor was fully informed of the nature of the compromise offer by the debtor."[95]

Here, although there is evidence that Defendant sent Plaintiff several checks for amounts less than the total allegedly owed, Defendant provides no evidence that Plaintiff "understood that the[se] payment[s] w[ere] tendered in full settlement of the dispute."[96] In other words, there is no evidence that Plaintiff's acceptance of these partial payments was intended to satisfy the entire debt. Therefore, Plaintiff is entitled to summary judgment on this defense.

### 2. Payment

Defendant asserts the defense of "payment," which is "a special or affirmative defense in a suit on open account."[97] Defendant has the burden of proving that it has made a payment.[98] Plaintiff argues that there is no evidence that Defendant paid Plaintiff's claim in full.[99] Defendant responds that Plaintiff "ignores that Defendant's [affirmative defense] was regarding [Plaintiff]'s claim for the entire $106,545.17 of the original credit agreement. This was despite Defendant paying [Plaintiff] $58,311.70 of this fee through check."[100] Defendant contends that Plaintiff accepted this payment, and that Plaintiff's "failure to amend their pleading to reflect this does not suddenly make this counterclaim moot."[101]

---

[95] *Id.* (citing *Harrington*, 441. So. 2d at 1256).

[96] *Id.* (citing *Ryan*, 68 So. 3d at 569).

[97] *Paul Piazza and Son, Inc v. Sider*, 427 So.2d 672, 673 (La. App. 4 Cir. 1983); *see also* La. Code Civ. P. art. 1005 (listing the "extinguishment of the obligation in any manner" as an affirmative defense).

[98] *Nat'l Cash Reg. Co. v. Benoit*, 228 So. 2d 319 (La. App. 3 Cir. 1969).

[99] Rec. Doc. 50-2 at 3.

[100] Rec. Doc. 53 at 6.

[101] *Id.* at 6–7.

It is undisputed that Plaintiff originally claimed damages in the amount of $106,545.17, and that Defendant has since paid $58,311.70 of it by check. Defendant does not explain why its payment of $58,311.70 creates a dispute of fact as to its liability for the remaining balance. Of course, Plaintiff cannot recover twice for the amounts already paid. However, because it is undisputed that Defendant has not paid the full amount of the claim, Plaintiff is entitled to summary judgment on this defense.

### 3. Waiver

Defendant's answer asserted the affirmative defense of waiver.[102] "The essential elements of a waiver . . . are the existence, at the time of the alleged waiver, of a right, advantage, or benefit, the knowledge, actual or constructive, of the existence thereof, and an intention to relinquish such right, advantage, or benefit. Voluntary choice is of the very essence of waiver."[103] "Waiver involves both knowledge and intention and it follows that ignorance of a material fact negatives waiver. Waiver can result only from the intentional relinquishment of a known right."[104]

Defendant argues that Plaintiff "waived its right to payment by knowingly breaching its contract with Defendant through accelerating delivery and payment for electrical materials and forcing Defendant to warehouse said materials."[105] Defendant further argues that because Plaintiff has already accepted several checks from Defendant, "[i]t has thus waived its claim to payment

---

[102] Rec. Doc. 32.

[103] *Hogan Exploration, Inc. v. Monroe Engineering Associates, Inc.*, 430 So. 2d 696 (La. App. 2nd Cir (1983) (quoting *Michel*, 65 So. 2d at 115).

[104] *Michel*, 65 So.2d at 120.

[105] Rec. Doc. 53 at 7.

for the full sum of $106,545.17."[106] However, Defendant has not provided any evidence that Plaintiff intentionally relinquished the right to collect the remaining sum of money by accepting the partial payment. Furthermore, Defendant offers no evidence that Plaintiff knowingly relinquished its right to recover the outstanding sum when it closed the warehouse and accelerated delivery and payment. Therefore, Plaintiff is entitled to summary judgment as to Defendant's affirmative defense of waiver.

### 4. Estoppel

Defendant asserts the affirmative defense of estoppel. Estoppel is the "effect of the voluntary conduct of a party whereby [it] is barred from asserting rights against another party justifiably relying on such conduct and who has changed [its] position to [its detriment] as a result of such reliance."[107] "Estoppels are not favored [under Louisiana] law; therefore, a party cannot avail himself of that doctrine unless he proves all essential elements of the plea."[108] "[T]he three essential elements of estoppel are: (1) a representation; (2) justifiable reliance on the representation; and (3) a change in position to one's detriment as the result of such reliance."[109]

Defendant argues that Plaintiff "made a representation that they would warehouse all construction materials and allow [Defendant] to order and pay for these materials on an as-needed basis."[110] However, Defendant does not provide evidence about the nature of any representation made by Plaintiff. Defendant appears to rely on the affidavit of Kara Williams, who declares as

---

[106] *Id.*

[107] *Wilkinson v. Wilkinson*, 323 So. 2d 120, 126 (1975).

[108] *Hansen v. River Cities Disposal Co.*, 51,700 (La. App. 2 Cir. 11/15/17); 245 So. 3d 213, 223.

[109] *Zimeri v. Citizens and Southern Intern. Bank of New Orleans*, 664 F.2d 952, 955 (5th Cir. 1981).

[110] Rec. Doc. 53.

follows:

> 6. [Plaintiff] had a warehouse in Harahan, Louisiana, which would order and segregate materials and supplies for [Defendant], on a project-specific basis.

> 7. [Plaintiff] would deliver as-needed portions of the materials and supplies to the particular job site, in the normal course of the project.

> 8. [Plaintiff] would then invoice [Defendant], on an ongoing basis, for each partial delivery of the materials and supplies, until a job was completed.

> 9. As each partial delivery occurred, [Defendant] would then drop off a check at [Plaintiff]'s Harahan facility to pay for said partial delivery.[111]

However, Defendant does not point to evidence that a representation was made, who it was made by, when it was made, or whether the representation contemplated that this arrangement was indefinite.

In any event, even assuming a representation was made, Defendant fails to demonstrate that it was justifiable for Defendant to rely on any such representation. Defendant contends that "it was justifiable for Defendant to rely on this representation because the initial course of dealings between the parties saw [Defendant] request delivery of and pay for [the materials] as [Defendant] needed them."[112] However, the Fifth Circuit has explained that under Louisiana law, a party's "reliance on promises made outside of an unambiguous, fully-integrated agreement [is] unreasonable as a matter of law."[113] Because the parties' fully integrated contract says nothing about any duty to store materials, Defendant's reliance on any representation that Plaintiff would do so was unreasonable as a matter of law. Therefore, Plaintiff is entitled to summary judgment

---

[111] Rec. Doc. 19-2.

[112] Rec. Doc. 53 at 8.

[113] *Drs. Bethea, Moutsoukas and Weaver, LLC* v. *St .Paul Guardian Ins. Co.*, 376 F.3d 399, 403–04 (5th Cir. 2004).

on this defense.

### 5. *Duress*

Louisiana Civil Code article 1959 provides that consent to a contract "is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. Age, health, disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear."[114] Defendant argues that "Defendant became a victim of economic duress when Mayer unexpectedly accelerated delivery of all materials to Defendant. Defendant had no option, despite Mayer's breach and Defendant's loss of profit, because it needed the materials from Mayer or else it would have lost its construction job with general contractor B&L."[115] However, even assuming that Plaintiff's conduct was sufficient to create a reasonable fear of unjust and considerable injury, this conduct necessarily occurred after Defendant consented to the contract. However, "[d]uress results when 'a person makes an improper threat that *induces a party* who has no reasonable alternative *to manifest his assent*.'"[116] Defendant offers no evidence, and provides no argument, that its consent to the contract was obtained through duress. Therefore, Plaintiff is entitled to summary judgment as to this defense.

### 6. *Failure of consideration*

In its answer, Defendant asserted the affirmative defense of "failure of consideration."[117]

---

[114] La. Civ. Code Art. 1959.

[115] Rec. Doc. 53.

[116] *Wolf. v. Louisiana State Racing Com'n*, 88-C-3064, 545 So. 2d 976, 980 (La. 1989).

[117] Rec. Doc. 32 at 6.

Louisiana Code of Civil Procedure Article 1005 lists "failure of consideration" as an affirmative defense.[118] However, it is well established that consideration is not required under Louisiana law.

> Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be consideration to support a contract, so long as the parties have a lawful "cause."[119]

Furthermore, "'cause' is not 'consideration.' The reason why a party binds [itself] need not be to obtain something in return or to secure an advantage for [itself]."[120] Therefore, although the Louisiana Code of Civil Procedure still lists "failure of consideration" as an affirmative defense, Louisiana courts have explained that this article "at the time of its enactment was in accordance with the terminology of the former Civil Code articles addressing 'cause.' However, when those Civil Code articles were amended in 1983 to remove the term 'consideration' from the explanation of 'cause,' the legislature failed to likewise amend [the Louisiana Code of Civil Procedure]."[121]

Defendant argues that "consideration initially existed on the premise that Mayer would warehouse construction materials for [Defendant] and allow [Defendant] to order and pay for them on [an] as-needed basis"[122] and that such consideration failed when Plaintiff closed the Harahan warehouse and accelerated delivery and payment of the materials.[123] However, even assuming that to be true, as explained above, consideration is not required under Louisiana law. Therefore,

---

[118] La. Code Civ. P. art. 1005.

[119] *Aaron & Turner, LLC v. Perret*, No. 07-1701 (La. App. 1 Cir. 5/4/09); 22 So. 3d 910, 915.

[120] La. Civ. Code art 1967, cmt. c.

[121] *Mapp Constr., LLC v. Southgate Penthouses, LLC*, No. 09-0850 (La. App. 1 Cir. 10/23/09); 29 So. 3d 548, 565 n. 14.

[122] Rec. Doc. 53 at 9.

[123] *Id.*

Plaintiff is entitled to summary judgment on this defense.

### 7. Laches

Plaintiff moved for summary judgment on Defendant's affirmative defense of laches.[124] Defendant makes no argument in response, and thus appears to concede that summary judgment on this defense is proper. Because Defendant bears the burden of proof of its affirmative defense at trial and has failed to respond to Plaintiff's arguments as to this defense,[125] the Court will grant summary judgment for Plaintiff on this defense.

### 8. Contributory negligence

Plaintiff moved for summary judgment on Defendant's affirmative defense of contributory negligence because Plaintiff did not assert a negligence claim.[126] Defendant makes no argument in response, and thus appears to concede that summary judgment on this defense is proper. Because Defendant bears the burden of proof of its affirmative defense at trial and has failed to respond to Plaintiff's arguments as to this defense,[127] the Court will grant summary judgment for Plaintiff on this defense.

### 9. Breach of contract by Mayer

Because this affirmative defense is identical to Defendant's counterclaim for breach of contract, the Court addresses them together below.

---

[124] Rec. Doc. 50-2 at 5.

[125] See Duplantis, 948 F.2d at 190; Forsyth, 19 F.3d at 1537; see also Morris, 144 F.3d at 380.

[126] Rec. Doc. 50-2 at 5.

[127] See Duplantis, 948 F.2d at 190; Forsyth, 19 F.3d at 1537; see also Morris, 144 F.3d at 380.

23

*10. Failure to mitigate damages*

Plaintiff moves for summary judgment on Defendant's affirmative defense of failure to mitigate damages because, according to Plaintiff, there is no evidence that Plaintiff failed to make reasonable efforts to mitigate damages.[128] Rather, Plaintiff argues that the record shows that Plaintiff "attempted to recover the losses through the contractors and owners for whom Chester was working, and that [Plaintiff] successfully mitigated some of those losses" as it was able to recover $67,906.61.[129] Defendant responds that Plaintiff failed to mitigate damages "by sitting on monies for payment that had been tendered via checks in order to establish federal jurisdiction and justify an award for attorney's fees."[130] Defendant argues that Plaintiff waited to cash the checks in order to "artificially generate the amount in controversy needed for federal jurisdiction."[131] Defendant points to evidence in the record demonstrating that Plaintiff was informed on February 12, 2021, seven days prior to the filing of the lawsuit, that Defendant was sending several checks to Plaintiff.[132]

Louisiana Civil Code Article 2002 provides that "[a]n obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced."[133]

---

[128] Rec. Doc. 50-2 at 6.

[129] *Id.*

[130] *Id.* at 11.

[131] *Id.*

[132] Rec. Doc. 19-2 at 3, 5; Rec. Doc. 19-3 at 3–7.

[133] La. Civ. Code art. 2002.

"Reasonable efforts" are "such efforts as do not place an excessive burden on the obligee."[134] Defendant does not argue that Plaintiff failed to mitigate its damages from Defendant's alleged breach of contract. Rather, Defendant contends that Plaintiff failed to mitigate attorney's fees by filing the lawsuit despite knowledge that Defendant had mailed checks to satisfy a substantial amount of the debt allegedly owed to Plaintiff.[135] Defendant argues that "[r]ather than cash these checks, [Plaintiff] sat on them to create the impression they were owed $106,545 in order to justify an award for attorney's fee and to artificially generate the amount in controversy needed for federal jurisdiction."[136] Defendant cites no authority for the application of the mitigation rule in such a context. Rather, it seems more prudent to consider Plaintiff's litigation conduct in the context of a motion for attorney's fees, rather than a motion for summary judgment. Thus, the Court will grant summary judgment as to this affirmative defense. However, the Court will consider Plaintiff's litigation conduct in resolving any subsequent motion for attorneys' fees.

### 11. Breach of Contract Affirmative Defense and Counterclaim

Defendant has asserted both an affirmative defense and a counterclaim regarding Plaintiff's alleged breach of the contract. Plaintiff moves for summary judgment on both. However, because the claims are identical whether characterized as an affirmative defense or a counterclaim, the Court will consider them together.

Plaintiff argues that it is entitled to summary judgment on Defendant's affirmative defense and counterclaim for breach of contract because there is no evidence that Plaintiff breached the

---

[134] La. Civ. Code art. 2002, cmt. c (quoting *Unverzagt v. Young Builders, Inc.*, 215 So. 2d 823 (1968)).

[135] Rec. Doc. 53 at 11.

[136] *Id.*

contract. Specifically, Plaintiff argues that the contract says nothing about an obligation for Plaintiff to keep the Harahan warehouse open or to store materials for Defendant, and that there is no evidence that the contract was modified.[137] Plaintiff further argues that Defendant's damages for storage costs are consequential damages, which are not recoverable under the terms of the parties' agreement.[138] Lastly, Plaintiff argues that there is no evidence that Plaintiff delivered the wrong materials to Defendant.[139] In response, Defendant argues that because the agreement is "silent on how [Plaintiff] is supposed to deliver and store the goods for [Defendant]," the Court must "view the agreement in terms of 'the conduct of the parties before and after the formation of the contract."[140] Defendant contends that the "initial course of dealings" demonstrate that "the parties intent was to have [Plaintiff] warehouse all job-specific materials for [Defendant], and then deliver them to [Plaintiff] at the job stie on an as-needed basis."[141] Lastly, Defendant argues that under Louisiana law, any contractual provision waiving consequential damages is null and void.[142]

Under Louisiana law, the "essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige."[143] "Interpretation of a

---

[137] Rec. Doc. 50-2 at 7–8.

[138] *Id.*

[139] *Id.*

[140] Rec. Doc. 53 at 13.

[141] *Id.* at 13–14.

[142] *Id.*

[143] *Denham Homes, LLC v. Teche Fed. Bank*, No. 14-1576 (La. App. 1 Cir. 9/18/15); 182 So. 3d 108, 119 (citing La. Civ. Code art. 1994 and *Favrot v. Favrot*, No. 10-0986 (La. App. 4 Cir. 2/9/11); 68 So. 3d 1099, 1108–09.)

contract is the determination of the common intent of the parties."[144] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[145] "The words of a contract must be given their generally prevailing meaning."[146]

The terms of the parties' written contract are silent as to any obligation for Plaintiff to store the materials at its warehouse. The terms of the contract do provide as follows:

> THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES. AND MAY NOT BE ALTERED EXCEPT IN WRITING SIGNED BY A CORPORATE OFFICER OF MAYER AND THE BUYER. AND SHALL BE CONSTRUED ACCORDING TO THE LAWS OF THE STATE IN WHICH VENUE IS PROPER AND AS PROVIDED HEREIN.[147]

Citing Louisiana Civil Code article 2053, Defendant argues that the parties' "course of dealings" "clearly evidence that the parties' intent was to have [Plaintiff] warehouse all job-specific materials for [Defendant,] and then deliver them to [Defendant] at the job site on an as-needed basis."[148] Louisiana Civil Code article 2053 provides as follows:

> A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.[149]

However, Defendant does not explain why article 2053 applies where the Court is not "interpret[ing]" "[a] doubtful provision." Indeed, the comments to article 2053 make clear that it

---

[144] La. Civ. Code art. 2045.

[145] La. Civ. Code art. 2046.

[146] La. Civ. Code art. 2047.

[147] Rec. Doc. 39-3 at 8.

[148] Rec. Doc. 53 at 13.

[149] La. Civ. Code art. 2053.

was intended to "clarif[y] the law by providing that courts may resort to equity for guidance only when the meaning of a provision is in doubt. They may not do so in order to enlarge or restrict the scope of a contract whose meaning is apparent."[150] Defendant does not point to any provision of the parties' contract that is ambiguous as to whether Plaintiff had an obligation to store materials and provide them on an as-needed basis. Rather, Defendant concedes that the contract is silent on this topic. Instead, Defendant argues that "[t]he parties' conduct immediately after the contract was signed makes it clear that [Plaintiff] had an obligation to keep [the materials] warehoused until Defendant requested them." However, Defendant provides no authority for the proposition that the parties' conduct added terms to the parties' written agreement. In fact, as to Defendant's claim that Plaintiff breached the contract by accelerating delivery and payment, Louisiana Civil Code Article 2550 provides that "[p]ayment of the price is due at the time and place stipulated in the contract, or at the time and place of delivery if the contract contains no such stipulation."[151] Because the parties' agreement does not specify when payment is due, payment was due upon delivery absent sufficient evidence of some other agreement. The Court notes that each invoice to Defendant had a specific due date, each of which were at least 30 days after the materials were shipped.[152] Therefore, Defendant has not carried its burden of demonstrating that Plaintiff breached any obligation owed to Defendant.[153] Accordingly, Plaintiff is entitled to summary judgment on this

---

[150] La. Civ. Code art 2053, cm't. a.

[151] La. Civ. Code. art 2550.

[152] Rec. Doc. 39-3 at 9–14.

[153] Defendant also states that Plaintiff delivered "incorrect and defective electrical materials and supplies." Rec. Doc. 53 at 15. However, Defendant has not provided any evidence that Plaintiff delivered incorrect or defective materials.

28

counterclaim and affirmative defense.

*12. Unjust Enrichment Counterclaim*

Plaintiff moves for summary judgment on Defendant's counterclaim for unjust enrichment. Plaintiff argues that there is no evidence that Plaintiff was enriched at Defendant's expense, and that Defendant "has legal remedies in the form of a breach of contract claim," precluding any claim for unjust enrichment.[154] Defendant responds that this counterclaim "is being pleaded in the alternative to Defendant's breach of contract claim, not alongside it."[155] Defendant argues that Plaintiff was unjustly enriched by forcing Defendant to warehouse materials, and by accelerating delivery and payment for such materials.[156] Defendant contends that it was impoverished by these actions because it had to pay for storage of the materials and pay in advance for materials it did not yet need.[157] Defendant argues that it can assert unjust enrichment "in the alternative in case [its] pleadings for other contractual remedies do not succeed."[158] Thus, Defendant contends that its unjust enrichment claim is cognizable "in the event its breach of contract counterclaim is unsuccessful."[159]

The following five elements are required to establish an unjust enrichment claim under Louisiana law:

> (1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a connection between the enrichment and resulting impoverishment,

---

[154] Rec. Doc. 50-2 at 8.

[155] Rec. Doc. 53 at 15.

[156] *Id.*

[157] *Id.*

[158] *Id.*

[159] *Id.*

(4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment, and finally (5) the action will only be allowed when there is no other remedy at law, i.e., the action is subsidiary or corrective in nature.[160]

"Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract."[161] "The important question is whether another remedy is available, not whether the party seeking a remedy will be successful."[162]

Here, Defendant's unjust enrichment counterclaim is precisely what Louisiana law prohibits. An unjust enrichment claim does not become available merely because a party's other claims have been unsuccessful. Defendant cites *"We the People" Paralegal Services LLC v. Watley* and *Baker v. Maclay Properties Co.* for the proposition that "a claimant can plead for unjust enrichment in the alternative in case their pleadings for other contractual remedies do not succeed."[163] However, both of those cases involve unjust enrichment claims where a contract has been rendered null and unenforceable.[164] Where the "claim is based on a relationship that is controlled by an enforceable contract," as it is here, "[n]o  unjust enrichment claim shall lie."[165] Thus, Defendant's unjust enrichment counterclaim cannot succeed as an "alternative" should the breach of contract counter claim fail. Therefore, Plaintiff is entitled to summary judgment on this counterclaim.

---

[160] *Drs. Bethea, Moustouskas and Weaver LLC*, 376 F.3d at 407 (quoting *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So. 2d 422, 432 (1967)).

[161] *Id.* (citing *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993)).

[162] *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 581 F. App'x 440, 443–44 (5th Cir. 2014).

[163] Rec. Doc. 53 at 15.

[164] *"We The People" Paralegal Services, LLC v. Watley*, 33,480 (La. App. 2 Cir. 8/25/00); 766 So. 2d 744, 748; *Baker v. Maclay Properties Co.*, 94-1529 (La. 1/17/95); 648 So. 2d 888, 896.

[165] *Drs. Bethea, Moutsoukas and Weaver LLC*, 375 F.3d at 408.

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's "Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses and Counterclaims"[166] is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this 16th day of August, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---
[166] Rec. Doc. 50.